IN THE UNITED STATES DISTRICT COURT FOR THE
NORTHERN DISTRICT OF FLORIDA
PANAMA CITY DIVISION

CLAUDIA M. SESSION,
      Plaintiff,

vs.                              Case No.: 5:17cv88/EMT

NANCY A BERRYHILL,
Acting Commissioner of Social Security,
      Defendant.
_____/

## MEMORANDUM DECISION AND ORDER

This case has been referred to the undersigned magistrate judge for disposition pursuant to the authority of 28 U.S.C. § 636(c) and Fed. R. Civ. P. 73, based on the parties' consent to magistrate judge jurisdiction (*see* ECF Nos. 8, 9). It is now before the court pursuant to 42 U.S.C. § 405(g) of the Social Security Act ("the Act"), for review of a final decision of the Commissioner of the Social Security Administration ("Commissioner") denying Plaintiff's application for disability insurance benefits ("DIB") under Title II of the Act, 42 U.S.C. §§ 401–34.

Upon review of the record before this court, it is the opinion of the undersigned that the findings of fact and determinations of the Commissioner are supported by substantial evidence; thus, the decision of the Commissioner should be affirmed.

# I.     PROCEDURAL HISTORY

On October 4, 2013, Plaintiff filed an application for DIB, and in the application she alleged disability beginning November 10, 2012 (tr. 12).[1]   Her application was denied initially and on reconsideration, and thereafter she requested a hearing before an administrative law judge ("ALJ").   A hearing was held on November 10, 2015, and on December 16, 2015, the ALJ issued a decision in which he found Plaintiff "not disabled," as defined under the Act, at any time through the date of his decision (tr. 12–21).   The Appeals Council subsequently denied Plaintiff's request for review.   Thus, the decision of the ALJ stands as the final decision of the Commissioner, subject to review in this court.   Ingram v. Comm'r of Soc. Sec. Admin., 496 F.3d 1253, 1262 (11th Cir. 2007).   This appeal followed.

# II.     FINDINGS OF THE ALJ

In denying Plaintiff's claims, the ALJ made the following relevant findings (*see* tr. 12–21):

---

[1] All references to "tr." refer to the transcript of Social Security Administration record filed on June 16, 2017 (ECF No. 12).   Moreover, the page numbers refer to those found on the lower right-hand corner of each page of the transcript, as opposed to those assigned by the court's electronic docketing system or any other page numbers that may appear.

Case No.: 5:17cv88/EMT

(1)  Plaintiff met the insured status requirements of the Act through December 31, 2017[2];

(2)  Plaintiff did not engage in substantial gainful activity since November 10, 2012, the alleged onset date;

(3)  Plaintiff had the following severe impairments during the relevant period: degenerative disc disease ("DDD") of the cervical spine and status-post right rotator cuff repair;

(4)  Plaintiff had no impairment or combination of impairments that met or medically equaled the severity of one of the listed impairments in 20 C.F.R. Part, 404, Subpart P, Appendix 1;

(5)  Plaintiff had the residual functional capacity ("RFC") to perform light work as defined in 20 C.F.R. § 404.1567(b), such that she could occasionally lift/carry twenty pounds, frequently lift/carry ten pounds, stand/walk six hours in an eight-hour workday, and sit six hours in an eight-hour workday.  She could occasionally balance, stoop, crouch, kneel, crawl, and climb ramps and stairs.  She could not climb ladders, ropes, or scaffolds.  She could occasionally reach overhead with her right upper extremity, and she could occasionally handle and finger with her right hand;

(6)  Plaintiff could not perform any past relevant work;

(7)  Plaintiff was born on September 8, 1964, and was forty-eight years of age, which is defined as a younger individual aged between eighteen and forty-nine, on the alleged disability onset date.  Plaintiff subsequently changed age category to closely approaching advanced age;

(8)  Plaintiff has at least a high school education and can communicate in English;

---

[2] Thus, the time frame relevant to Plaintiff's claim for DIB is November 10, 2012 (date of alleged onset), through December 16, 2015 (date of ALJ decision), even though she was insured for DIB purposes through 2017.

(9)     Transferability of job skills is not material to the determination of disability because using the Medical-Vocational Rules as a framework supports a finding that Plaintiff is "not disabled," whether or not she has transferable job skills;

(10)     Considering Plaintiff's age, education, work experience, and RFC, there were jobs existing in significant numbers in the national economy that Plaintiff could have performed during the relevant period;

(11)     Plaintiff therefore was not under a disability, as defined in the Act, between November 10, 2012, and December 16, 2015.

III.     STANDARD OF REVIEW

Review of the Commissioner's final decision is limited to determining whether the decision is supported by substantial evidence from the record and was a result of the application of proper legal standards.  Carnes v. Sullivan, 936 F.2d 1215, 1218 (11th Cir. 1991) ("[T]his Court may reverse the decision of the [Commissioner] only when convinced that it is not supported by substantial evidence or that proper legal standards were not applied."); *see also* Lewis v. Callahan, 125 F.3d 1436, 1439 (11th Cir. 1997); Walker v. Bowen, 826 F.2d 996, 999 (11th Cir. 1987).  "A determination that is supported by substantial evidence may be meaningless . . . if it is coupled with or derived from faulty legal principles."  Boyd v. Heckler, 704 F.2d 1207, 1209 (11th Cir. 1983), *superseded by statute on other grounds as stated in* Elam v. R.R. Ret. Bd., 921 F.2d 1210, 1214 (11th Cir. 1991).  As long as proper legal standards were applied,

the Commissioner's decision will not be disturbed if in light of the record as a whole the decision appears to be supported by substantial evidence. 42 U.S.C. § 405(g); Falge v. Apfel, 150 F.3d 1320, 1322 (11th Cir. 1998); Lewis, 125 F.3d at 1439; Foote v. Chater, 67 F.3d 1553, 1560 (11th Cir. 1995).  Substantial evidence is more than a scintilla, but not a preponderance; it is "such relevant evidence as a reasonable person would accept as adequate to support a conclusion." Richardson v. Perales, 402 U.S. 389, 401, 91 S. Ct. 1420, 1427, 28 L. Ed. 2d 842 (1971) (quoting Consolidated Edison Co. v. NLRB, 305 U.S. 197, 59 S. Ct. 206, 217, 83 L. Ed. 126 (1938)); Lewis, 125 F.3d at 1439.  The court may not decide the facts anew, reweigh the  evidence, or substitute its judgment for that of the Commissioner.  Martin v. Sullivan, 894 F.2d 1520, 1529 (11th Cir. 1990) (citations omitted).  Even if the evidence preponderates against the Commissioner's decision, the decision must be affirmed if supported by substantial evidence.  Sewell v. Bowen, 792 F.2d 1065, 1067 (11th Cir. 1986).

The Act defines a disability as an "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 423(d)(1)(A).  To qualify as a disability the physical or mental impairment must be so severe that the claimant

is not only unable to do her previous work, "but cannot, considering [her] age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy."  *Id*. § 423(d)(2)(A).  Pursuant to 20 C.F.R. § 404.1520(a)–(g),  the Commissioner analyzes a disability claim in five steps:

1.      If the claimant is performing substantial gainful activity, she is not disabled.

2.      If the claimant is not performing substantial gainful activity, her impairments must be severe before she can be found disabled.

3.      If the claimant is not performing substantial gainful activity and she has severe impairments that have lasted or are expected to last for a continuous period of at least twelve months, and if her impairments meet or medically equal the criteria of any impairment listed in 20 C.F.R. Part 404, Subpart P, Appendix 1, the claimant is presumed disabled without further inquiry.

4.      If the claimant's impairments do not prevent her from doing her past relevant work, she is not disabled.

5.      Even if the claimant's impairments prevent her from performing her past relevant work, if other work exists in significant numbers in the national economy that accommodates her RFC and vocational factors, she is not disabled.

The claimant bears the burden of establishing a severe impairment that keeps her from performing her past work. 20 C.F.R. § 404.1512. If the claimant establishes such an impairment, the burden shifts to the Commissioner at step five to show the existence of other jobs in the national economy which, given the claimant's impairments, the claimant can perform. MacGregor v. Bowen, 786 F.2d 1050, 1052 (11th Cir. 1986). If the Commissioner carries this burden, the claimant must then prove he cannot perform the work suggested by the Commissioner. Hale v. Bowen, 831 F.2d 1007, 1011 (11th Cir. 1987).

IV.     PLAINTIFF'S PERSONAL, EMPLOYMENT, AND MEDICAL HISTORY

   A.     Relevant Personal and Employment History

Plaintiff was forty-eight years of age on the date she alleges she became disabled (tr. 170). At the time of her hearing she was 5'7" and stated she weighed 245 pounds (tr. 30). She previously worked as a cook and prep cook, housekeeper, and janitor (tr. 216). Plaintiff last worked in November 2012 as a housekeeper for the Gulf Coast Medical Center—a job that required her to lift fifty to sixty pounds—but she tore her right rotator cuff on the job and, according to Plaintiff, was ultimately terminated after her injuries failed to fully heal (*see* tr. 30–32). As a result of the on-

the-job injury, Plaintiff filed a workers' compensation claim, which she settled (*see, e.g.*, tr. 132–33[3]); the injury also necessitated surgery (tr. 32–33).

Plaintiff, who is right-handed, testified that she cannot use her right arm to lift overhead or to reach fully in all directions; that she cannot not use her right hand to pick up things; and that she drops things and has trouble gripping with her right hand (tr. 30, 33, 37). Plaintiff stated she has some "problems" in her neck, upper back, "thoracic discs," and lumbar spine, and she has DDD in her cervical spine but has not had any treatment, physical therapy, injections, or "anything like that" for these conditions (*see* tr. 33–35).

Plaintiff initially testified that no doctor had prescribed any medication for her conditions but then backtracked a bit and stated that her primary care physician with the Family Clinic had prescribed Tramadol for pain (tr. 34). She stated she also occasionally uses over-the-counter Tylenol for pain (tr. 35).[4] Plaintiff testified she is unable to cook, other than to "fix noodles" but has to sit in a chair while the noodles cook, and she is unable to wash clothes (tr. 36, 37). She additionally stated she has

---

[3] The workers' compensation settlement agreement indicates, as Plaintiff testified, that she was unable to meet the physical requirements of the housekeeping job after her injury, but it notes that she resigned as part of the agreement and was not terminated (*see, e.g.*, tr. 163, ¶ 3).

[4] Plaintiff made similar reports at other times regarding her use of over-the-counter Advil for pain in lieu of prescription medication (tr. 217, 242).

difficulty walking and can walk only as far as her mailbox, or a total of about eight car lengths (tr. 38).

On a disability report Plaintiff alleged she is unable to work due to right shoulder and arm pain, lower and upper back "issues," pain in both hands, pain in her legs and right hip, left-sided hearing loss, "problems" with her feet, and pain in the back of her neck (tr. 215). On the same report she stated she had not seen a physician for her neck pain, hand pain, hip pain, or hearing loss, noting that she had no insurance (tr. 222).

Finally, the court notes that, at the outset of Plaintiff's hearing, her attorney asserted that Plaintiff was disabled due to "the dysfunction of a major joint or spinal disorder [and] peripheral neuropathy" (tr. 30). But at the conclusion of the hearing, her attorney stated, "I would just suggest that we have X-rays in [Exhibit] 9-F [tr. 444–50] that talk about degenerative changes in the lumbar and thoracic and then we have the MRI of the cervical, and I'll leave it at that, Your Honor . . . ." (tr. 38–39).[5]

B.     Relevant Medical History[6]

---

[5] The ALJ responded to this concluding remark of Plaintiff's attorney by asking, "Let me just confirm. My notes indicate that the Family Clinic X-rays of the thoracic and lumbar spine showed mild degenerative changes, is that correct?," to which Plaintiff's attorney responded affirmatively (tr. 38–39).

[6] The summary of the medical evidence in this section and the section that follows is brief, as it is generally limited to the evidence relied upon by the parties (*see* ECF No. 16 at 5–8, ECF No.

On or about July 7, 2015, Plaintiff presented to Maria U. Tedtaotao, M.D., with complaints of neck and back pain and was referred for x-rays of the lumbar, cervical, and thoracic spine (tr. 448–50). No acute bony injuries were present on any x-ray, and only mild degenerative changes were noted on the lumbar and thoracic spine x-rays (*id*.). The cervical x-ray revealed degenerative changes at C4-5 and C5-6 and mild to moderate foraminal stenosis in the mid-cervical spine, which was most significant at C5-6 (tr. 450). Plaintiff returned to Dr. Tedtaotao in August of 2015 to review the x-ray results (tr. 446–47). Plaintiff reported right shoulder pain with decreased range of motion, joint pain, back pain, and difficulty walking but denied muscle pain or neck pain (tr. 446). She also reported being in "a lot of" pain (*id*.). A physical examination revealed full range of motion in the neck and all extremities but decreased range of motion in the right shoulder, as well as paraspinal and cervical spine spasm and thoracic pain (*id*.). Plaintiff's gait was steady and her strength was intact (*id*.). Plaintiff's diagnoses included spinal stenosis of the cervical spine, degeneration of the thoracic and lumbar spine, shoulder joint pain, and obesity (tr. 447). Plaintiff was to try Ultram for pain and return for follow up in one month (*id*.).

---

17 at 2–5), which is the only medical evidence of record from the time frame relevant to this appeal (November 10, 2012, through December 16, 2015)).

Case No.: 5:17cv88/EMT

On November 5, 2015, Plaintiff obtained magnetic resonance imaging ("MRI") of her cervical spine, which showed moderate to severe spinal canal stenosis secondary to disc degeneration/protrusion and extrusion at multiple levels extending from C3-4 to C6-7, with spondylotic changes at those levels (tr. 452).

C.     Other Information Within Plaintiff's Claim File

On November 21, 2013, Plaintiff underwent a consultative examination by Osama Elshazly, M.D. (tr. 440).  On examination, Plaintiff had tenderness over the cervical spine area with slightly limited mobility on extension (tr. 441).  Plaintiff had tenderness over the right acromioclavicular joint with decreased mobility and a severe muscle spasm noted at the right shoulder muscle area (*id*.).  Dr. Elshazly also noted tenderness over the thoracic spine area with moderate to severe muscle spasm on both sides of the spine (*id*.).  Straight leg raising was slightly positive at 45 degrees sitting and lying down (*id*.).  Plaintiff had decreased sensation in the right leg on the lateral side, but her reflexes were normal and she had 4 out of 5 ("4/5") motor power in her leg muscles (*id*.).  She could squat half way and displayed decreased grip strength of 2/5 in the right hand and 4/5 in the left hand with 3/5 motor strength in the right arm (*id*.).  Plaintiff's gait was normal, and she had full range of motion in every area

tested, except with right shoulder flexion, which was reduced by 50 degrees (tr. 437–39, 229).

Dr. Elshazly's impressions were chronic neck pain with radicular symptoms, status-post rotator cuff surgery of the right shoulder, peripheral neuropathy in the right upper extremity, chronic back pain, and thoracic disc disease (tr. 441–42).

At Plaintiff's hearing held November 10, 2015, a vocational expert ("VE") testified that a hypothetical person with Plaintiff's RFC could not perform her past relevant work (tr. 39–40). The person could, however, perform other available work such as gate guard, a job performed at the light level of exertion (tr. 40); "[m]aybe an usher," also performed at the light level of exertion (*see id.*); and surveillance system monitor, performed at the sedentary level of exertion (tr. 40). If the same person was absent from work more than two days per month and needed to take more than two unscheduled breaks per day, however, the person would be unemployable in any occupation (tr. 40–41).

V.    DISCUSSION

Plaintiff contends the ALJ erred: (1) in failing to conclude that her thoracic DDD, peripheral neuropathy, and obesity were "medically determinable severe impairment[s]"; (2) by failing to pose a proper hypothetical question to the vocational

expert; (3) in failing to properly evaluate her obesity; and (4) in evaluating Plaintiff's complaints of pain and other symptoms.

A.      Medically Determinable Severe Impairments/Hypothetical Question

As previously noted, Plaintiff contends the ALJ erred in failing to find that her thoracic DDD and peripheral neuropathy were medically determinable severe impairments.[7]

The Commissioner's regulations provide that, once it is determined that a claimant is not working, the Commissioner will then determine whether the claimant has:

> a medically determinable physical or mental impairment(s) (see § 404.1520(a)(4)(ii)). Your impairment(s) must result from anatomical, physiological, or psychological abnormalities that can be shown by medically acceptable clinical and laboratory diagnostic techniques. Therefore, a physical or mental impairment must be established by objective medical evidence from an acceptable medical source. We will not use your statement of symptoms, a diagnosis, or a medical opinion to establish the existence of an impairment(s). After we establish that you have a medically determinable impairment(s), then we determine whether your impairment(s) is severe.

20 C.F.R. § 404.1521. An impairment or combination of impairments is not severe if it does not significantly limit a claimant's physical or mental ability to do basic

---

[7] The undersigned will discuss the claims as to Plaintiff's obesity separately.

work activities. 20 C.F.R. § 404.1522. In other words, to be disabled, the medically determinable impairment must render the claimant unable to engage in her past relevant work or any other substantial gainful activity. 20 C.F.R. § 404.1505(a).

With respect to the thoracic DDD, x-rays of Plaintiff's thoracic spine showed only mild degenerative changes, as the ALJ noted (tr. 14). And Plaintiff has shown nothing in the record indicating that this condition had any effect on her ability to work. Therefore, she has not shown the ALJ erred in failing to find it was a severe impairment. *See* Bridges v. Bowen, 815 F.2d 622, 625–26 (11th Cir. 1987) (an impairment or combination of impairments is not severe if it is a slight abnormality or a combination of slight abnormalities that would have no more than a minimal effect on the claimant's physical or mental ability to work, irrespective of age, education, or work experience); McDaniel v. Bowen, 800 F.2d 1026, 1030 (11th Cir. 1986).

As to the peripheral neuropathy, the only medical evidence of this during the relevant period is Dr. Elshazly's impression of peripheral neuropathy in the right upper extremity, made in connection with his consultative examination of Plaintiff in November 2013 (tr. 441–42). His impression appears to be based in large part on Plaintiff's report that her shoulder pain radiated into her right arm and was

"accompanied with numbness and tingling," which she indicated began following her rotator cuff surgery in August of 2010 (*see* tr. 440).

The record appears to be inconsistent with Plaintiff's report to Dr. Elshazly. For example, a board-certified orthopedic surgeon released Plaintiff to full-time, full-duty work on June 7, 2012, with no restrictions (tr. 420), and at that time Plaintiff was working as a housekeeper at the medium level of exertion (*see* tr. 266). Then, on July 11, 2012, Plaintiff was in a minor automobile accident, having been rear-ended by a vehicle traveling at less than ten miles per hour (tr. 423). She went to a hospital and advised the attending physician that she had no history of weakness in the upper extremities, and sensory and motor examinations yielded no abnormal results (tr. 423–24). Likewise, Plaintiff specifically denied weakness, numbness, and tingling in her extremities to her treating physician Dr. Tedtaotao in August of 2015; she displayed full strength upon Dr. Tedtaotao's examination; and Dr. Tedtaotao did not diagnose peripheral neuropathy (*see* tr. 446–47). What is more, Dr. Elshazly's own examination revealed full range of motion in Plaintiff's wrists, hands, thumbs, and fingers; the finger-to-nose test he conducted was normal; Plaintiff could button her shirt; and motor power was 3/5 in her right upper extremity, although grip strength was reduced to 2/5 (tr. 438, 441).

Nevertheless, to the extent peripheral neuropathy exists, it is related to Plaintiff's status-post right rotator cuff repair, a condition the ALJ thoroughly considered, accounted for in his findings, and in fact found severe. For example, the ALJ considered whether the right shoulder condition met the criteria of Listing 1.02(B), which required the ALJ to consider Plaintiff's fine and gross manipulative abilities (tr. 15). Although the ALJ determined that the condition did not meet the criteria of the Listing, he did include restrictions related to the right upper extremity in Plaintiff's RFC. Specifically, he limited Plaintiff to only occasionally reaching overhead with her right arm and only occasional handling and fingering with her right hand (tr. 14, 15). These restrictions adequately account for the right upper extremity limitations deemed credible by the ALJ. Thus, any error by the ALJ in failing to specifically recite peripheral neuropathy in the listing of impairments found severe is harmless. *See, e.g.*, Hall v. Schweiker, 660 F.2d 116, 119 (5th Cir. Unit A Sept. 1981) (reversal and remand based on disregard of a social security ruling may occur only when the plaintiff also shows that prejudice arose from that error); Diorio v. Heckler, 721 F.2d 726, 728 (11th Cir. 1983) (the ALJ's decision will stand when an incorrect application of the regulations results in "harmless error," because the correct application would not contradict the ALJ's ultimate findings); Brueggemann v.

Barnhart, 348 F.3d 689, 695 (8th Cir. 2003) (the harmless error inquiry involves determining "whether the ALJ would have reached the same decision denying benefits, even if he had followed the proper procedure . . . .").

For the same reasons, Plaintiff's argument that the ALJ should have included a limitation in grip strength in the hypothetical questions he posed to the VE (and in the RFC), as a result of the peripheral neuropathy, fails. As before, the ALJ's findings related to the rotator cuff condition adequately account for any limitations in Plaintiff's right upper extremity.[8]

B.    Obesity

Plaintiff contends the ALJ erred in evaluating her obesity, including by failing to conclude that it was a severe, medically determinable impairment.

The court has found a diagnosis of obesity in Dr. Tedtaotao's treatment record of August 10, 2015 (tr. 447) (it is not listed in the diagnoses provided by Dr. Elshazly (see tr. 441–42)). But a diagnosis alone is insufficient to establish the severity of an impairment. McCruter v. Bowen, 791 F.2d 1544, 1547 (11th Cir. 1986) ("the 'severity' of a medically ascertained disability must be measured in terms of its effect

---

[8] It also bears noting that Plaintiff's counsel was given an opportunity to pose a hypothetical question to the VE, in which he could have included the very limitations he now faults the ALJ for excluding, yet he chose not to do so (see tr. 41).

upon ability to work, and not simply in terms of deviation from purely medical standards of bodily perfection or normality"); *see also* <u>Salles v. Comm'r. of Social Security</u>, 229 F. App'x 140, 145 (3d Cir. 2007) (diagnoses alone, including diagnosis of depression, insufficient to establish severity at step two).

Moreover, although an ALJ must consider obesity as an impairment when evaluating disability, *see* SSR 02–1P, 2000 WL 628049, at *1 (Sept. 12, 2000) ("we consider obesity to be a medically determinable impairment and remind adjudicators to consider its effects when evaluating disability"), it is Plaintiff who bears the burden of proving that her obesity results in functional limitations and that she was "disabled" under the Social Security Act. *See* 20 C.F.R. § 404.1512(a) (instructing claimant that "you have to prove to us that you are blind or disabled [and you must] . . . submit all evidence known to you that relates to whether or not you are blind or disabled"); <u>Jones v. Apfel</u>, 190 F.3d 1224, 1228 (11th Cir. 1999) (claimant bears the burden of proving she has a severe impairment or combination of impairments); <u>Flynn v. Heckler</u>, 768 F.2d 1273, 1274 (11th Cir. 1985). Plaintiff did not mention obesity as a condition contributing to her physical limitations in her application for disability in October of 2013 (tr. 215), nor did Plaintiff raise obesity as an issue at her administrative hearing before the ALJ in November of 2015 (tr. 28–42). Nevertheless, Plaintiff now urges the court to remand the case to the ALJ for consideration of her

obesity, contending based on general language from SSR 02-01p, that Plaintiff's RFC should "include obesity as it would affect her ability to work at a ceratin level on a 'regular and continuing basis' as fatigue would affect her ability to physically sustain work activity" (ECF No. 16 at 14). Plaintiff also asserts that "this consideration would be especially true considering a RFC of less than light work with a sit-stand option due to musculoskeletal impairments" (*id*.). Plaintiff, however, alleges no facts and points to no evidence in the record to support her assertion that her obesity places significant limitations on her ability to work. And the objective medical evidence of record does not demonstrate that any treating or consultative physician placed limitations on Plaintiff due to her obesity.

The Eleventh Circuit and other district courts within this circuit have found that an ALJ did not commit reversible error in circumstances similar to this case. *See, e.g.*, James v. Barnhart, 177 F. App'x 875, 877 n.2 (11th Cir. 2006) (per curiam) (ALJ did not err in failing to find obesity to be a severe impairment where, during her own testimony at the administrative hearing, the plaintiff did not complain that obesity was a functional impairment); Gary v. Astrue, No. 1:08cv411–CSC, 2009 WL 3063318, at *2–3 (M.D. Ala. Sept. 22, 2009) (failure to mention obesity or explain conclusion as to whether obesity caused limitations on her ability to work did not provide basis for relief where the claimant identified no evidence in the record to support her

position that the condition caused "significant limitations on her ability to work");

Vickers v. Astrue, No. 3:08cv78/MCR/EMT, 2009 WL 722273, at *14 (N.D. Fla.

Mar. 18, 2009) (remand for failure to mention obesity was not required where the

claimant did not show how his obesity impacted his ability to work); Ingram v.

Astrue, No. 8:07-cv-1591-JDW-TBM, 2008 WL 2943287, at *6 (M.D. Fla. July 30,

2008) (finding that even though the claimant's weight was noted repeatedly

throughout the record, the ALJ's failure to mention obesity or address it in accordance

with SSR 02–1p did not constitute grounds for reversal where the claimant had not

identified any evidence suggesting that his RFC was affected by his obesity); *see also*

Skarbek v. Barnhart, 390 F.3d 500 (7th Cir. 2004) (remand not required where

claimant did not specifically claim obesity as an impairment, either in his disability

application or at his hearing, and although references to his weight in the medical

records were likely sufficient to alert the ALJ to the impairment, the claimant did not

specify how his obesity further impaired his ability to work but merely speculated that

his weight makes it more difficult to stand and walk).

As with the cases cited above, here Plaintiff has failed to explain how her

obesity causes further limitations than those found by the ALJ, and she has not

identified any reliable medical opinions supporting any limitations beyond those

stated in her RFC that result from her obesity.  Consequently, she is entitled to no relief on this basis.

C.       Subjective Complaints of Pain

In Holt v. Sullivan, 921 F.2d 1221, 1223 (11th Cir. 1991), the court articulated the "pain standard," which applies when a disability claimant attempts to establish a disability through her own testimony of pain or other subjective symptoms.  The pain standard requires:  (1) evidence of an underlying medical condition and either (a) objective medical evidence that confirms the severity of the alleged pain arising from that condition, or (b) that the objectively determined medical condition is of such a severity that it can be reasonably expected to give rise to the alleged pain.  Holt, 921 F.2d at 1223 (internal citation omitted).  If a claimant testifies as to her subjective complaints of disabling pain and other symptoms, as Plaintiff did here, the ALJ must clearly "articulate explicit and adequate reasons" for discrediting the claimant's allegations of completely disabling symptoms.   Foote, 67 F.3d at 1561–62.  Additionally, "'[a]lthough this circuit does not require an explicit finding as to credibility, . . . the implication must be obvious to the reviewing court.'"  Id. at 1562 (quoting Tieniber v. Heckler, 720 F.2d 1251, 1255 (11th Cir. 1983)).  The credibility determination does not need to cite "'particular phrases or formulations,'" but it cannot merely be a broad rejection which is "'not enough to enable [the district court

or this Court] to conclude that [the ALJ] considered her medical condition as a whole.'" *Id.* (quoting Jamison v. Bowen, 814 F.2d 585, 588–90 (11th Cir. 1987)).

Here, the ALJ concluded that Plaintiff has medically determinable impairments that reasonably could be expected to cause some of her symptoms (tr. 16). Then, as the pain standard requires, the ALJ proceeded to address the extent to which the intensity and persistence of Plaintiff's pain limits her ability to work, citing the record to support his conclusion that Plaintiff's statements are not credible to the extent they are inconsistent with the assessed RFC (*id.*).

More particularly, in finding Plaintiff less than fully credible, the ALJ identified the following reasons, among others (*see* tr. 16–19):

1.    Although Plaintiff reported chronic neck pain, she reported having no physical therapy, steroid injections, or surgeries for her neck;

2.    The objective medical evidence does not support Plaintiff's testimony that she cannot walk more than eight car lengths or stand long enough to cook noodles;

3.    Plaintiff was cleared for full-time work with no restrictions by a specialist on July 7, 2012;

4.    Plaintiff's physical examination following a minor car accident on July 11, 2012, was largely unremarkable;

5.    After July of 2012, Plaintiff obtained no follow-up treatment for shoulder, back, or neck pain until she saw Dr. Tedtaotao in July of 2015, other than the consultative examination by Dr. Elshazly in November of 2013; similarly, in general Plaintiff obtained little to no treatment after

her rotator cuff surgery or during the relevant period (and did not follow up with Dr. Tedtaotao as advised);

6.  Plaintiff continued working as a housekeeper through November 2012 despite her shoulder injury (which occurred in February of 2010 and for which she had surgery in August of 2010 (*see* tr. 17))[9];

7.  Thoracic and lumbar x-rays resulted in only mild findings;

8.  Dr. Elshazly's examination resulted in multiple unremarkable findings; and

9.  On January 22, 2014, after reviewing Plaintiff's claims file, a non-examining consultative agency physician also concluded that Plaintiff could perform light work (and assessed the same limitations regarding Plaintiff's right upper extremity as did the ALJ (*see* tr. 61)).

With regard to the pain issue, the undersigned, of course, is not charged with making independent fact conclusions, but only with reviewing the substantiality of the evidence underlying the conclusions reached by the ALJ. *See* Moore v. Barnhart, 405 F.3d 1208, 1211 (11th Cir. 2005). Having done so, the undersigned concludes that the reasons cited by the ALJ are supported by substantial evidence in the record as a whole, and that each was a proper consideration in evaluating Plaintiff's credibility. Accordingly, the ALJ did not err in discounting Plaintiff's complaints of disabling pain and limitations.

---

[9] In elaborating on this reason, the ALJ stated: "[T]he claimant's ability to perform a medium exertion job through November of 2012 despite her shoulder impairment suggests that she would have, at a minimum, been able to perform work within the assigned residual function, which is less than the full range of light work." (tr. 17).

VI.   CONCLUSION

For the foregoing reasons, the Commissioner's decision is supported by substantial evidence and should not be disturbed.  42 U.S.C. § 405(g); <u>Lewis</u>, 125 F. 3d at 1439; <u>Foote</u>, 67 F.3d at 1560.  Furthermore, Plaintiff has failed to show that the ALJ applied improper legal standards, erred in making his findings, or that any other ground for reversal exists.

Accordingly, it is hereby **ORDERED**:

1.      That the decision of the Commissioner is **AFFIRMED**, and this action is **DISMISSED**.

2.      That **JUDGMENT** is entered, pursuant to sentence four of 42 U.S.C. § 405(g), **AFFIRMING** the decision of the Commissioner.

3.      That the Clerk is directed to close the file.

At Pensacola, Florida this <u>30th</u> day of August 2018.

*/s/ Elizabeth M. Timothy*
**ELIZABETH M. TIMOTHY**
**CHIEF UNITED STATES MAGISTRATE JUDGE**